# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UBS FINANCIAL SERVICES, INC, | : | Case No. 1:18-cv-178 |
|     Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| NANCY ULRICK, *et al.*, | : | |
|     Defendants. | : | |

## ORDER GRANTING DEFENDANT NANCY ULRICK'S MOTION FOR SUMMARY JUDGMENT (Doc. 24)

This case is before the Court on Defendant Nancy Ulrick's unopposed motion for summary judgment (Doc. 24).

## I. INTRODUCTION

### A. Parties.

Interpleader Plaintiff UBS ("UBS") is an investment advisory company and conducts business throughout the United States, including the State of Ohio. (Doc. 24-1 at ¶ 2).

Defendant Nancy Ulrick is the surviving spouse of Dale Boncutter, deceased. Ms. Ulrick and Mr. Boncutter were married on July 14, 2017. (Doc. 24-1 at ¶ 3). To Ms. Ulrick's knowledge, Mr. Boncutter was never married to any other person during his lifetime. (*Id.*)

Defendant Candy Loura is the daughter of Mr. Boncutter. (Doc. 24-1 at ¶ 4).

## B. Undisputed Facts.

Prior to his death on May 17, 2016, Mr. Boncutter owned several investment/financial accounts that were managed on his behalf by UBS. One of Mr. Boncutter's accounts is the account from which the assets at issue in this litigation were derived. This account was called a "UBS Traditional Account"-account number XX XX815 ("Boncutter IRA Account). The Boncutter IRA Account was a "transfer on death" account, meaning that upon Mr. Boncutter's death, the assets in the Boncutter IRA Account would be transferred to the beneficiary or beneficiaries designated by Mr. Boncutter as identified in the beneficiary designation records of UBS. At the time of Mr. Boncutter's death, the balance of the Boncutter IRA Account was approximately $407,644.53. (Doc. 24-1 at ¶ 6).

Mr. Boncutter also had a second account that was managed by UBS. This second account was a UBS "RMA Rollover Account"-account number XX XX953B ("Boncutter RMA Account"). The Boncutter RMA Account was also a "transfer on death" account. At all times, Ms. Ulrick was named as the 100% "pay on death beneficiary" of the Boncutter RMA Account. (Doc. 24-1 at ¶ 7).

Prior to his death, Mr. Boncutter made several changes to the beneficiary designation of the Boncutter IRA account. In particular, on about July 14, 2007, Mr. Boncutter changed the beneficiary designation of the Boncutter IRA Account and designated both Ms. Ulrick and Ms. Loura to each be 50% beneficiaries of the Boncutter IRA, meaning that each of them would receive 50% of the assets in the Boncutter IRA upon Mr. Boncutter's death. (Doc. 24-1 at ¶ 8).

Throughout his life, Mr. Boncutter's relationship with Mr. Loura became somewhat strained at times. On at least one occasion before his death, Mr. Boncutter specifically advised Ms. Ulrick that he had decided to remove Ms. Loura as a "pay on death" beneficiary of the Boncutter IRA and that he intended to designate Ms. Ulrick to be the sole 100% beneficiary of the Boncutter IRA Account. (Doc. 24-1 at ¶ 9).

On or about August 18, 2014, Mr. Boncutter changed the beneficiary designation of the Boncutter IRA and named Ulrick as the 100% pay on death beneficiary of the account upon his death (the "8/18/14 Beneficiary Designation"). This change in beneficiary designation was consistent with what Mr. Boncutter had advised Ms. Ulrick he intended to do. Pursuant to the 8/18/14 Beneficiary Designation, Ms. Ulrick became entitled to receive all of the assets of the Boncutter IRA upon his death. (Doc. 24-1 at ¶ 10, Ex. A).

Mr. Boncutter died on May 17, 2016. (Doc. 24-1 at ¶ 11).

Ms. Ulrick notified UBS of Mr. Boncutter's death. As the sole 100% pay on death beneficiary of the Boncutter IRA and the Boncutter RMA, Ms. Ulrick completed and submitted the appropriate UBS paperwork required to cause the transfer of these assets to her as the "pay on death beneficiary" of each asset. Thereafter, UBS closed the Boncutter accounts and transferred all funds into new UBS accounts that it had created for Ms. Ulrick (the "Ulrick IRA" and "Ulrick RMA"). (Doc. 24-1 at ¶ 12).

On November 2, 2016, Ms. Loura filed a complaint ("Probate Case") against UBS and Ms. Ulrick in the Probate Court of Hamilton County, Ohio ("Probate Court"), claiming, *inter alia*, that the 8/18/14 Beneficiary Designation was forged and invalid.

(Doc. 24-1 at ¶ 13). In the Probate Case, Ms. Loura did <u>not</u> challenge the prior beneficiary designation, which designated Ms. Ulrick and Ms. Loura as 50%-50% beneficiaries of the Boncutter IRA, nor did she challenge the validity of the beneficiary designation in which Boncutter named Ulrick to be the 100% pay on death beneficiary of the Boncutter RMA account. (*Id.* at ¶ 14).

UBS and Ms. Ulrick, through their respective attorneys, both made numerous appearances in the proceedings brought by Ms. Loura in the Probate Case. By agreement of counsel, the Probate Court issued an Agreed Temporary Restraining Order/Preliminary Injunction which enjoined Ms. Ulrick from "…spending, transferring, withdrawing or converting…" any assets held in the Ulrick IRA and the Ulrick RMA. Thus, Ms. Ulrick was not permitted to have access to any funds in either of those accounts (not even access to assets from the Boncutter RMA for which she was the 100% pay on death beneficiary). (Doc. 24-1 at ¶ 15).

The matter proceeded in the Probate Court and a trial was originally scheduled for November 17, 2017 and November 20, 2017. Prior to trial, the parties exchanged discovery. The parties also attempted to resolve the matter through mediation. The original trial date was vacated by the parties and the Court after the parties reached a settlement of the matter. At some point prior to the execution of the settlement, however, Ms. Loura reneged on the settlement. (Doc. 24-1 at ¶ 16).

The Probate Court then ultimately dismissed the matter at Ms. Loura's request on February 23, 2018, thereby extinguishing the Agreed Restraining Order/Preliminary Injunction that had been previously issued by the Court. (Doc. 24-1 at ¶ 17).

Thereafter, Ms. Ulrick requested that the assets in the Ulrick IRA and Ulrick RMA be released to her. Ms. Ulrick also directed a financial agent to attempt to transfer the funds from UBS to another financial account that Ms. Ulrick used for her financial investments. UBS did not comply with Ms. Ulrick's attempts to receive the monies to which she was entitled pursuant to Mr. Boncutter's pay on death designations. (Doc. 24-1 at ¶ 18).

After the dismissal of the Probate Case, Ms. Loura continued to contact UBS and claim that the 8/18/14 Beneficiary Designation was a forgery and invalid. (Doc. 24-1 at ¶ 19).

Ms. Ulrick maintains that the 8/18/14 Beneficiary Designation is a valid document making her the 100% beneficiary of the assets therein. Following Mr. Boncutter's death, Ms. Ulrick fully complied with the requirements of UBS in order to have said assets transferred to her. (Doc. 24-1 at ¶ 20).

On March 13, 2018, UBS commenced this lawsuit by filing a Complaint for Interpleader. (Doc. 1). UBS's Complaint states that UBS has a good-faith doubt as to whom the disputed assets in the Ulrick IRA Account and the Ulrick RMA Account belong, and UBS cannot provide Ms. Ulrick unrestricted access to the assets in the accounts without subjecting itself to the possibility of liability to Ms. Loura for improperly transferring ownership of the assets to Ms. Ulrick. (*Id.* at ¶ 34).

On May 9, 2018, Ms. Ulrick filed a Counterclaim against UBS and a Crossclaim against Ms. Loura. Ms. Ulrick's pleading seeks: (1) a declaratory judgment that Ms. Ulrick is entitled to 100% of the proceeds from the Ulrick RMA; (2) a declaratory

5

judgment that Ms. Ulrick is entitled to 100% of the proceeds from the Ulrick IRA; and (3) in the alternative, a declaratory judgment that Ms. Ulrick is entitled to 50% of the proceeds from the Ulrick IRA.[1]

On November 30, 2018, Ms. Ulrick filed a motion for summary judgment. (Doc. 24). Ms. Ulrick's motion seeks all of the assets now in the control of UBS in the Ulrick IRA and Ulrick RMA. Ms. Ulrick's motion for summary judgment is <u>unopposed</u>. UBS filed a response which states UBS is a neutral custodian of the funds at issue and takes no position as to Ms. Ulrick's motion for summary judgment. Ms. Loura did not respond to Ms. Ulrick's motion for summary judgment. Aside from filing an Answer on August 10, 2018 (Doc. 12) and a document titled "Candy Loura is an Accused Defendant That is Sui Juris" on September 21, 2018 (Doc. 21), Ms. Loura has not participated in this lawsuit.[2] [3]

---

[1] Ms. Ulrick's pleading also asserted three claims for breach of contract against UBS. However, on December 11, 2018, this Court entered an Order granting UBS's motion to interplead bond, which discharged UBS from "any liability with respect to the assets at issue in this action" except "to pay the disputed assets in accordance with any settlement agreement between Interpleader Defendants, or in accordance with any final judgment entered by this Court[.]" (Doc. 26 at ¶ 2).

[2] Ms. Ulrick filed a motion to strike Ms. Loura's answer or, alternatively, for a more definite statement. (Doc. 13). Ms. Ulrick's motion is **DENIED**. First, Fed. R. Civ. P. 12(e) only authorizes a party to move for a more definite statement "of a pleading to which a responsive pleading is allowed," and Ms. Loura's answer does not allow a responsive pleading. Second, the Court is cognizant that Ms. Loura is proceeding *pro se* in this matter and finds that her answer does not constitute "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" such that it may be stricken by Fed. R. Civ. P. 12(f).

[3] Ms. Loura did not participate in the September 10, 2018 Preliminary Pretrial Conference by telephone or the December 3, 2018 status conference by telephone.

## II. STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

Ms. Ulrick's motion seeks all of the assets now in the control of UBS in the Ulrick IRA and Ulrick RMA. The undisputed facts in this lawsuit, set forth by the uncontested testimony in Ms. Ulrick's declaration (Doc. 24-1), establish that Mr. Boncutter owned the Boncutter IRA and the Boncutter RMA (*id.* at ¶¶ 6-7), Ms. Ulrick is the 100% pay-on-death beneficiary of the Boncutter IRA (*id.* at ¶ 10, Ex. A); Ms. Ulrick is the 100% pay-on-death beneficiary of the Boncutter RMA (*id.* at ¶ 7); Mr. Boncutter died on May 17, 2016 (*id.* at ¶ 11); and UBS transferred the Boncutter IRA and Boncutter RMA into the Ulrick IRA and Ulrick RMA, respectively (*id.* at ¶ 12). The Court finds that there is no

issue of fact, and Ms. Ulrick is entitled to all of the assets now in the control of UBS in the Ulrick IRA and Ulrick RMA as a matter of law.[4] [5]

## IV. CONCLUSION

For the foregoing reasons:

1. Ms. Ulrick's motion to strike and/or for more definite statement (Doc. 13) is **DENIED**;

2. Ms. Ulrick's motion for summary judgment (Doc. 24) is **GRANTED**;

3. Ms. Ulrick is entitled to all of the assets now in control of UBS in the Ulrick IRA and the Ulrick RMA, and UBS shall transfer those assets to Ms. Ulrick forthwith; and

4. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 1/23/19

Timothy S. Black
United States District Judge

---

[4] Ms. Ulrick's motion also requests costs and reasonable attorney's fees. (Doc. 24 at 10). The Court directs Ms. Ulrick to S.D. Ohio Civ. R. 54.1, which provides instructions for filing a bill of costs, and S.D. Ohio Civ. R. 54.2, which provides instructions for filing a motion for attorney's fees.

[5] The Court is cognizant that Ms. Loura challenged the authenticity of Mr. Boncutter's signature on the 8/18/14 Beneficiary Designation in the Probate Case. Ms. Loura did not respond to Ms. Ulrick's motion for summary judgment and has not set forth any evidence in this Court that would warrant even a suggestion that Mr. Boncutter's signature on the designation was forged. The Court notes that, under 26 U.S.C. § 6064, "[t]he fact that an individual's name is signed to a return, statement, or other document shall be prima facie evidence for all purposes that the return, statement or other document was actually signed by him."